FILED BY ____ D.C.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

05 JUN 30  PM 3: 35

ROBERT R. DI TROLIO
CLERK OF U.S. DIST. CT.
W.D. OF TN.-JACKSON

| | |
|---|---|
| BRENDA HAYES, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | )  No. 04-1217 T |
| | ) |
| JO ANN B. BARNHART, | ) |
| Commissioner of Social Security , | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

---

## ORDER REVERSING COMMISSIONER'S DECISION

---

Plaintiff, Brenda Hayes, filed this action to obtain judicial review of the Defendant Commissioner's final decision denying her application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 410 *et seq* and supplemental security income ("SSI") benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* (R. at 81-83.) Plaintiff's applications for benefits, filed on February 11, 2002, were denied initially and on reconsideration. At Plaintiff's request, a hearing was held before an administrative law judge ("ALJ"), on August 6, 2003. On February 10, 2004, the ALJ issued a final decision finding that Plaintiff was not disabled, and the Appeals Council denied Plaintiff's request for review. Plaintiff filed the present action on February 4, 2005, seeking reversal

This document entered on the docket sheet in compliance
with Rule 58 and/or 79 (a) FRCP on ___07-01-05___

(23)

of the Commissioner's decision on the grounds that it is not supported by substantial evidence in the record. The Commissioner contends that the decision is supported by substantial evidence. For the reasons set forth below, the Commissioner's decision to deny Plaintiff's application for disability benefits is REVERSED.

### Standard of Review

Judicial review in this court is limited to determining whether or not there is substantial evidence in the record as a whole to support the Secretary's decision, 42 U.S.C. §§ 405(g), 1383(c)(3); see Garcia v. Secretary of Health and Human Serv., 46 F.3d 553, 555 (6th Cir. 1995) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)); Stanley v. Secretary of Health and Human Serv., 39 F.3d 115, 117 (6th Cir. 1994), and whether the correct legal standards were applied. See Cutlip v. Secretary of Health and Human Serv., 25 F.3d 284, 286 (6th Cir. 1994) (citing Perales, 402 U.S. at 401). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion. See Perales, 402 U.S. at 401; Garcia, 46 F.3d at 555; Stanley, 39 F.3d at 117; Cutlip, 25 F.3d at 286. The reviewing court may not resolve conflicts in the evidence nor decide questions of credibility. See Cutlip, 25 F.3d at 286; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). In addition, if the decision is supported by substantial evidence, it should not be reversed even if substantial evidence also supports the opposite conclusion. Smith v. Chater, 99 F.3d 780, 782 (6th Cir. 1996) (citing Cutlip, 25 F.3d at 286).

2

Facts

Plaintiff is a forty-nine year old female with a GED (high school equivalency degree), who alleges disability beginning November 29, 2001, primarily due to a ruptured disc, three bulging discs, and two deteriorating discs in her back. (R. at 83b.) Her past relevant work experience includes jobs as an assembly line worker, a waitress, a parking lot cleaner, and a caretaker for the elderly. (R. at 83c.)

In October of 1997, Plaintiff was examined at Pathways, Inc. by Pam Henson, M.S., NCC Counselor. This evaluation was the earliest date that Plaintiff's back pain was noted in the record as a current problem. (R. 382.) In December of 2001, Plaintiff was evaluated by Mark A. Jones, M.D., a radiologist, whose report indicated Plaintiff's clinical history of back and right hip pain was evidenced in an MRI by disc bulging and disc extrusion. (R. at 139.) In March of 2002, John R. Lindermuth, M.D., performed surgery on Plaintiff to remove her ruptured disc and stabilize her backbone. (R. at 158-59.)

In May of 2002, Plaintiff was seen by Grafton H. Thurman, M.D. Plaintiff complained of lower back pain with no significant improvement since back surgery two months earlier. Dr. Thurman asserted that Plaintiff has had back trouble for ten years and that Plaintiff "is very consistent," in constantly getting up and down due to her back pain, and refraining from sitting for very long. (R. at 185.) Dr. Thurman opined that Plaintiff tends to drag her left leg due to pain that is referred to her back when she moves her left hip. Dr. Thurman observed Plaintiff getting on and off the examining table "very slowly,

3

very stiffly, and very painfully." (R. at 186)  Dr. Thurman also opined that Plaintiff was limited to lifting ten pounds occasionally, less than ten pounds frequently, standing at least two out of eight hours, and sitting for a total of six out of eight hours. (R. at 189-90.)

Plaintiff's file was evaluated by two state agency doctors.  The first evaluation was completed on June 27, 2002, by Saul A. Juliao, M.D.  This evaluation did not refer to Plaintiff's current conditions; it was an assessment of Plaintiff's projected conditions twelve months after the onset date of November, 2002.  This first evaluation projected residual functioning capacity so that Plaintiff, by November, 2002, would hopefully be able to lift twenty pounds occasionally, ten pounds frequently, stand six out of eight hours, sit six out of eight hours, and have unlimited capacity to push or pull.  It was projected that Plaintiff would have to avoid concentrated exposure to "extreme cold, extreme heat, vibration, and fumes, odors, dusts, gases, poor ventilation, etc...."  This would allow Plaintiff to perform light level work. (R. at 214-21.)

On November 8, 2002, one year after the onset date, Plaintiff's file was evaluated by the second state agency doctor, James N. Moore, M.D., to determine her current residual functioning capacity.  Plaintiff had not gained residual functioning capacity in all the above listed categories that would enable her to perform light level work, as predicted in the June 27, 2002 state agency report.  Instead, the report stated Plaintiff was limited to lifting ten pounds occasionally, lifting ten pounds frequently, standing three out of eight hours, and sitting six out of eight hours.  In this second agency report, Plaintiff was only instructed to

4

avoid concentrated exposure to "fumes, odors, dusts, gases, poor ventilation, etc...." This would limit Plaintiff to sedentary work. (R. at 222-29.)

In October of 2002, Plaintiff was evaluated by Karen Davidson, M.D., her treating physician, who opined that Plaintiff continued to have chronic lower back pain and, as a result, could not return to her previous job that required a lot of lifting. (R. at 281.)

On August 6, 2003, Plaintiff testified at an administrative hearing before ALJ Sheldon P. Zisook. Plaintiff testified that even after back surgery, she continues to have ongoing pain and cannot bend or stoop. (R. at 48.) Plaintiff stated that she takes various medications for back pain, heart problems, panic attacks, and respiratory problems. (R. at 49-52.) Plaintiff contends that despite the medications, she continues to have pain if she sits or lies in bed for too long. (R. at 55). Plaintiff also stated that she has difficulty walking, she can no longer go to the store by herself, she is currently only able to do light housework, and that her daughter has to help her around the house. (R. at 53-54.)

On February 10, 2004, the ALJ determined that Plaintiff was not disabled. In particular, ALJ Zisook found that: (1) Plaintiff meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 31, 2006; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability; (3) Plaintiff's history of herniated disc, status post laminectomy, history of carpal tunnel syndrome, status post release surgery, hypertension, hypercholesterolemia, posttraumatic stress disorder and

generalized anxiety disorder are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b); (4) Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (5) Plaintiff's allegations regarding her limitations are not totally credible; (6) Plaintiff remains capable of lifting twenty pounds occasionally, and ten pounds frequently, standing, walking and sitting for six hours in an eight-hour workday. Mentally, despite the limitations imposed by her generalized anxiety disorder and posttraumatic stress disorder, Plaintiff remains capable of performing unskilled work activity; (7) Plaintiff is unable to perform any of her past relevant work as defined in 20 CFR §§ 404.1565 and 416.965; (8) Plaintiff is "a younger individual between the ages of 45 and 49" as defined in 20 CFR §§ 404.1563 and 416.963; (9) Plaintiff has a "high school equivalent education" as defined in 20 CFR §§ 404.1564 and 416.964; (10) Plaintiff has no transferable skills from any past relevant work as defined in 20 CFR §§ 404.1568 and 416.968; (11) Plaintiff has the residual functional capacity to perform a significant range of light work as defined in 20 CFR §§ 404.1567 and 416.967; (12) although Plaintiff's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.21 and Social Security Ruling 85-15 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform; (13) Plaintiff's capacity for light work is substantially intact and has not been compromised by any nonexertional limitations, and using the above-cited rules as a

framework for decision-making, Plaintiff is not disabled; and (14) Plaintiff was not under a "disability" at any time through the date of this decision, as defined by the Social Security Act in 20 CFR §§ 404.1520(f) and 416.920(f). (R. at 30-31.)

## Analysis

The Social Security Act defines disability as the inability to engage in substantial gainful activity due to a "physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), § 1382c(a)(3)(A). The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. 42 U.S.C. §§ 423, 1382c; see Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). The claimant bears the ultimate burden of establishing an entitlement to benefits. Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993).

In determining disability, the Commissioner conducts a five-step sequential analysis, as set forth in 20 C.F.R. § 404.1520 and § 416.920:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors if an individual is not working and is suffering from

a severe impairment which meets the duration requirement and which meets or equals a listed impairment found in 20 C.F.R. Part 404, Subpart. P, Appendix 1.

4.  An individual who can perform work that he has done in the past will not be found to be disabled.

5.  If an individual cannot perform his past relevant work, other factors including age, education, past work experience, and residual functional capacity will be considered to determine if other work can be performed.

Further analysis is unnecessary if it is determined that an individual is not disabled at any point in this sequential evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1989). In this case, analysis proceeded to the last step, where the ALJ found that Plaintiff is not disabled because she has the residual functional capacity to perform a significant number of jobs requiring light work.[1]

The dispute in this case involves the ALJ's potential misuse of a state agency evaluation as evidence in reaching the conclusion that Plaintiff has the residual functional capacity to perform light work. Plaintiff contends that the ALJ erred in using the first state agency evaluation as evidence of Plaintiff's current condition. This first report only stated that Plaintiff's projected residual functional capacity was predicted to be for light level work

---

[1] The regulations define light work as requiring:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objections weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b), § 416.967 (1998).

8

at a future date, twelve months after the onset of her condition.  Plaintiff argues the ALJ should have relied on the second state agency evaluation that reported Plaintiff's current residual functional capacity twelve months after the onset date was only for sedentary work. Plaintiff also claims that aside from the failure of the first agency report to support ALJ's finding that Plaintiff can perform light level work, there is not substantial evidence to support the ALJ's decision.  In addition, Plaintiff contends the ALJ improperly discredited Dr. Thurman's examining report.  The court must determine if there is substantial evidence in the record to support the ALJ's decision.

   1.  ALJ's Use of Doctor's Evaluations to Support Finding of No Disability

   In reversing the ALJ's decision, the Court finds that the ALJ misused a report made by a state agency doctor as evidence in support of ALJ's findings that Plaintiff "remains capable" of lifting twenty pounds occasionally... and has the residual functional capacity to perform light level work. (R. at 30.)  Plaintiff's file was evaluated by two state agency doctors. Dr. Juliao predicted that Plaintiff's residual functional capacity one year from her onset date (about four months from the date Plaintiff's file was evaluated) would be for light level work.  However, Dr. Moore evaluated Plaintiff's current residual functional capacity, at the one year anniversary from her onset date, and concluded that Plaintiff was limited to sedentary work. (R. at 214-29.)  Instead of relying on the current evaluation that Dr. Moore completed, the ALJ used Dr. Juliao's prediction of Plaintiff's residual functional capacity, accepted it as her current status, and discredited Dr. Moore's opinion by stating that there

9

was no new evidence in the record after Dr. Juliao evaluated the Plaintiff's file. (R. at 27-28.) Therefore, the ALJ's decision is reversed because the Court finds that the ALJ misused a state agency doctor's evaluation of a predicted status by accepting it as a current status.

### 2. Treating Physician Rule

The opinion of a treating physician must be given great weight when it is supported by sufficient medical evidence. <u>See</u> 20 C.F.R. § 404.1527(d)(2). Under the treating physician rule, opinions of physicians who have treated the plaintiff receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and "not inconsistent with the other substantial evidence in [the] case record." <u>Id.</u> The ALJ may reject opinions that are not supported by the medical findings and resolve conflicts in the evidence. <u>See</u> <u>Walters</u>, 127 F.3d at 529-30; <u>Cutlip</u>, 25 F.3d at 286-87; <u>Bogle v. Sullivan</u>, 998 F.2d 342, 347-48 (6th Cir. 1992); <u>Cohen v. Secretary of Health & Human Servs.</u>, 964 F.2d 524, 528 (6th Cir. 1992); <u>Young v. Secretary of Health and Human Serv.</u>, 925 F.2d 146, 151 (6th Cir. 1990); <u>Hall v. Bowen</u>, 837 F.2d 272, 276 (6th Cir. 1988); <u>Hardaway v. Secretary of Health & Human Servs.</u>, 823 F.2d 922, 927 (6th Cir. 1987). If the adjudicator finds that a treating physicians' conclusion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the medical record, he is required to apply the following factors in determining how much weight to give a treating physician: "the length of the treatment relationship and frequency of the examination, the nature and extent of the treatment

relationship, supportability of the opinion with the record as a whole, and the specialization of the treating source...." <u>Wilson v. Comm'r of Soc. Sec.</u>, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).

In the present case, the ALJ dismissed the opinion of Dr. Thurman, a government consultant who physically examined Plaintiff and opined that she was limited to sedentary work, because "he examined the claimant only two months out of back surgery." Dr. Thurman's evaluation was dismissed, and the opinion of a state agency medical consultant who did not examine Plaintiff was given controlling weight. (R. at 27.) The ALJ did not reject Dr. Thurman's opinion on the basis of contradictory or other medical evidence, but because "it seems reasonable to assume that the claimant would be much more limited in her ability to perform work related activities right after major surgery." (R. at 27.)

The Court finds that the ALJ cannot substitute his assumption for medical evidence. Because the opinion of Dr. Thurman is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, the ALJ should have given a physician who examined Plaintiff controlling weight over the ALJ's own assumptions. Consequentially, the Court finds that the ALJ erroneously rejected Dr. Thurman's opinion.

### 3. Plaintiff's Subjective Complaints of Pain

Plaintiff also maintains that nothing else in the record, including her testimony, supports the ALJ's factual finding that Plaintiff can perform light work activity. The court

11

must evaluate the ALJ's findings with regard to pain in light of applicable case law and Social Security Ruling ("SSR") 88-13.  SSR 88-13 requires more than mere allegations of pain.  The objective medical evidence must confirm an underlying impairment and the severity of the alleged symptoms, or establish that the impairment is of a severity that could reasonably give rise to the alleged symptoms.  See Blacha v. Secretary of Health and Human Serv., 927 F.2d 228, 230 (6th Cir. 1990); Duncan v. Secretary of Health and Human Serv., 801 F.2d 847, 852-54 (6th Cir. 1986).  In addition, when a claimant alleges fully disabling pain, the "ALJ may distrust [the] claimant's allegations . . . if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."  Moon v. Sullivan, 923 F.2d 1175, 1182-83 (6th Cir. 1990).

On August 6, 2003, Plaintiff testified at an administrative hearing before ALJ Zisook.  Plaintiff testified that even after back surgery, she continues to have ongoing pain and cannot bend or stoop. (R. at 48.)  Plaintiff stated that she takes various medications for back pain, heart problems, panic attacks, and respiratory problems. (R. at 49-52.)  Plaintiff contends that despite the medications, she continues to have pain if she sits or lies in bed for too long. (R. at 55.)  Plaintiff also stated that she has difficulty walking, she can no longer go to the store by herself, she is currently only able to do light housework, and that her daughter has to help her around the house. (R. at 53-54.)

In discrediting Plaintiff's subjective complaints of pain, the ALJ found her not to be credible because of "inconsistencies."  As evidence of this, the ALJ stated that Plaintiff's

reported abilities to shop, go to the movies and attend church services were inconsistent with her alleged functional limitations. (R. at 25.) However, when Plaintiff referred to her ability to shop alone, go to the movies and attend church services in their entirety, she was referring to her ability prior to the onset of her back condition, not her current ability to perform these activities. (R. at 53-61.) In addition, after Plaintiff's surgery, her treating physician opined that she was not "cured" from the surgery, and noted in the medical report that when Plaintiff attempted to go to Wal-Mart, she had back pain. (R. at 237.)

When taking into account the nature of Plaintiff's injury, the length of time that she has been treated, and the amount of medical evidence supporting her contention that she has back pain and is unable to perform light work, there is substantial objective evidence in the record to support Plaintiff's claim. For the foregoing reasons, the Court finds that the ALJ misinterpreted Plaintiff's subjective complaints of pain.

<u>Conclusion</u>

The Court concludes that there is not substantial evidence in the record to support the ALJ's decision that Plaintiff is not disabled. Therefore, the Commissioner's decision is hereby REVERSED, and disability insurance benefits, and supplemental security income benefits are awarded based on Plaintiff's application of February 11, 2002. The Clerk of Court is directed to prepare a judgment accordingly.

IT IS SO ORDERED.


_____

JAMES D. TODD

UNITED STATES DISTRICT JUDGE


_____

DATE

14

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 23 in
case 1:04-CV-01217 was distributed by fax, mail, or direct printing on
July 1, 2005 to the parties listed.

---

Joe A. Dycus
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Roger Stanfield
LAW OFFICE OF ROGER STANFIELD
P.O. Box 3338
Jackson, TN 38303--333

Honorable James Todd
US DISTRICT COURT